J-A08002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| J.A.Z. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| P.J.J. | : | |
| | : | |
| Appellant | : | No. 1052 WDA 2022 |

Appeal from the Order Entered September 9, 2022
In the Court of Common Pleas of Blair County
Civil Division at No:  No. 2010 GN 4413

BEFORE:   STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED: OCTOBER 26, 2023**

Appellant, P.J.J. ("Father"), appeals from an order granting the petition of Appellee, J.A.Z. ("Mother"), to relocate with the parties' child, E.J.Z. ("Child"), who was born in 2008, from Blair County to Allegheny County.

Mother's petition for relocation is the most recent dispute in decade-long divorce and custody proceedings between the parties.  The parties were married, and on November 22, 2010, Mother filed a complaint for divorce against Father, including a count seeking primary physical custody of Child.  In February 2014, the trial court entered the final divorce decree.  Mother and Father both live in Hollidaysburg, Blair County, Pennsylvania, six blocks apart.  Father, an employee at the retailer REI, is remarried, and he and his current wife have twin children.  Mother is a substitute teacher and freelance writer.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Child visits Father every Wednesday, and she has a very positive relationship with both parents.

In January 2016, Father filed a petition to modify custody. Following an evidentiary hearing, on December 27, 2016, the trial court directed that the parties share legal and physical custody of Child and that Child continue to reside with Mother. In October 2017, Father filed a petition for modification, requesting a 50/50 physical custody arrangement. Following evidentiary hearings, on August 17, 2018, the trial court entered an order awarding shared legal and physical custody to the parties but granting less than 50 percent custody to Father. Father appealed to this Court, which affirmed on March 11, 2019 in an unpublished memorandum.

On November 12, 2019, Mother began the present chapter of this case by filing a Notice Of Proposed Relocation from Blair County to Allegheny County. On August 16, 2021, Mother filed an Amended Notice Of Proposed Relocation.

The court held several evidentiary hearings on Mother's request for relocation. The essence of Mother's argument is that she obtained new employment in Allegheny County with Vision Benefits of America ("VBA"). Her salary at VBA is $72,000.00, over three times as much as her income in Blair County ($21,000.00). Mother alleged that Child's educational opportunities will substantially improve in Upper St. Clair, the district within Allegheny County where she intends to move with Child. Mother stated that she and Child have significant family ties in Allegheny County, and Child will benefit

from multiple cultural opportunities in Allegheny County that are not available in Blair County.

Following several evidentiary hearings, in an opinion and order docketed on June 14, 2022, the court granted Mother's request to locate with Child to Allegheny County. On July 6, 2022, Father filed a petition for reconsideration. In an order docketed on July 12, 2022, the court timely granted reconsideration of the June 14, 2022 order. On August 17, 2022, following a hearing, the court denied Father's petition for reconsideration. On September 14, 2022, Father filed a timely notice of appeal along with a Pa.R.A.P. 1925 statement of matters complained of on appeal. On September 20, 2022, the court sent a letter to the prothonotary of this Court advising that it would not file a Pa.R.A.P. 1925 opinion because it was satisfied with its June 14, 2022 opinion as the decision in this case.

Father raises the following issues in this appeal:

I. WHETHER THE TRIAL COURT ERRED AND/OR GROSSLY ABUSED ITS DISCRETION IN GRANTING THE PROPOSED RELOCATION WHEN THE FACTS OF RECORD DO NOT SUPPORT A DETERMINATION THAT MOTHER MET HER BURDEN THAT THE PROPOSED RELOCATION IS IN THE BEST INTEREST OF THE MINOR CHILD PURSUANT TO 23 PA.C.S.A. § 5337(h)?

II. WHETHER THE TRIAL COURT ERRED AND/OR GROSSLY ABUSED ITS DISCRETION IN GRANTING THE PROPOSED RELOCATION WHEN THE FACTS OF RECORD DO NOT SUPPORT THE DETERMINATION MADE BY THE TRIAL COURT THAT MOTHER ESTABLISHED SIGNIFICANT IMPROVEMENT IN THE QUALITY OF LIFE FOR HERSELF AND THE CHILD?

III. WHETHER THE TRIAL COURT ERRED AND/OR GROSSLY ABUSED ITS DISCRETION IN GRANTING THE PROPOSED

RELOCATION AND FINDING THAT MOTHER'S WORK REQUIRED HER TO BE ABLE TO WORK ON SITE AT HER EMPLOYMENT LOCATION IN ALLEGHENY COUNTY, THAT HER EMPLOYER'S FLEXIBILITY WOULD TERMINATE AT SOME POINT, AND THAT RELOCATION WAS NECESSARY FOR MOTHER TO RETAIN HER EMPLOYMENT WHEN THE FACTS OF RECORD DO NOT SUPPORT THIS DETERMINATION?

IV. WHETHER THE TRIAL COURT ERRED AND/OR GROSSLY ABUSED ITS DISCRETION IN GRANTING THE PROPOSED RELOCATION AND FINDING THAT MOTHER WOULD NEED TO BE ON SITE TO PROGRESS WITHIN HER COMPANY AND THAT THE CHILD WOULD BENEFIT FROM MOTHER'S IMPROVED EMPLOYMENT WHEN THE FACTS OF RECORD AS TESTIFIED TO BY MOTHER DO NOT SUPPORT THIS DETERMINATION?

V. WHETHER THE TRIAL COURT ERRED AND/OR GROSSLY ABUSED ITS DISCRETION IN GRANTING THE PROPOSED RELOCATION AND DETERMINING THAT MOTHER'S PROPOSED RELOCATION WOULD ENHANCE THE GENERAL QUALITY OF LIFE FOR MOTHER AND THE MINOR CHILD, INCLUDING, BUT NOT LIMITED TO, FINANCIAL OR EMOTIONAL BENEFIT OR EDUCATIONAL PURSUANT TO 23 PA.C.S.A. § 5337(h) WHEN THE RECORD ESTABLISHES:

A) MOTHER FAILED TO IDENTIFY THE SPECIFIC ADDRESS AND TYPE OF RESIDENCE SHE WOULD BE MOVING TO UPON RELOCATION.

B) MOTHER FAILED TO ESTABLISH HER SALARY OR EMPLOYMENT WOULD CHANGE IN ANY MANNER UPON RELOCATION AND HER COST OF LIVING WOULD INCREASE.

VI. WHETHER THE TRIAL COURT ERRED AND/OR GROSSLY ABUSED ITS DISCRETION IN GRANTING THE PROPOSED RELOCATION AND FINDING THE PROPOSED RELOCATION IS IN THE BEST INTEREST OF THE MINOR CHILD PURSUANT TO 23 PA.C.S.A. § 5337(h) WHEN THE COURT ALSO FOUND THAT RELOCATION WOULD INEVITABLY BE DETRIMENTAL TO FATHER AND THAT FATHER'S CURRENT RELATIONSHIP WITH THE MINOR CHILD IS ALMOST CERTAIN TO DIMINISH UPON RELOCATION OF THE CHILD?

VII. WHETHER THE TRIAL COURT ERRED AND/OR GROSSLY ABUSED ITS DISCRETION IN GRANTING THE PROPOSED

RELOCATION AND FINDING THAT MOTHER PERFORMED ADEQUATELY IN BEING FLEXIBLE AND GENEROUS IN PROVIDING ADDITIONAL PERIODS OF CUSTODY AND DID NOT ESTABLISH A PATTERN OF CONDUCT TO PROMOTE OR THWART THE RELATIONSHIP OF THE CHILD AND FATHER?

VIII. WHETHER THE TRIAL COURT AND/OR GROSSLY ABUSED ITS DISCRETION IN GRANTING THE PROPOSED RELOCATION AND FINDING THAT THE CHILD'S RELATIONSHIP WITH HER SIBLINGS COULD BE MAINTAINED WITH THE EFFORT OF BOTH PARTIES WHEN THE FACTS OF RECORD AS TESTIFIED TO BY MOTHER DO NOT SUPPORT THIS DETERMINATION?

Father's Brief at 4-7.

We begin by summarizing the applicable standard of review and statutory framework. Our standard of review is well-settled:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.... However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa. Super. 2009). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*Id.* The test is whether the evidence of record supports the trial court's conclusions. ***Ketterer v. Seifert***, 902 A.2d 533, 539 (Pa. Super. 2006).

The primary concern in custody cases is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340. With respect to a request for relocation, Section 5337 of the Act provides, "The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h)." 23 Pa.C.S.A. § 5337(i)(1). Further, "each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S.A. § 5337(i)(2).

Section 5337(h) provides as follows:

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational

and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

The trial court also was required to consider the custody factors set forth in 23 Pa.C.S.A. § 5328, which are as follows:

**§ 5328. Factors to consider when awarding custody.**

**(a) *Factors.*** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a); *see also A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013) (when making decision on relocation that also involves a custody decision, "the trial court must consider all ten relocation factors and all sixteen custody factors" outlined in the Act).

The trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). Further, Section 5323(d) of the Act "requires the trial court to set forth its mandatory assessment of the [...] factors prior to the deadline by which a litigant must file a notice of appeal." *A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014). In expressing the reasons for its decision,

> there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations . . . A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*Id.* at 822-23.

In his first and eighth arguments,[1] Father contends that the court abused its discretion in granting relocation because Mother failed to establish that relocation is in Child's best interests. We disagree.

---

[1] *See* Father's brief at 22-24 and 44-48. Father's eighth argument is essentially a recapitulation of his first argument, so we review them together.

The court carefully balanced all factors under Sections 5337(h) and 5328(a) as follows:

Section 5337(h)

(1) *Relationship with both parents*: The court determined that Child has a "significantly positive" relationship with both parents, Opinion, 6/14/22, at 8, but Child's relationship with Mother is closer, because Mother is unmarried and has no other children, whereas Father has remarried and has two additional children. Therefore, the court found that this factor weighed in favor of relocation.

(2) *Child's developmental needs*: The court determined that Child is gifted intellectually. Mother established, with documentary evidence, that the proposed new school district in Allegheny County (Upper St. Clair) has a "superior" curriculum for Child's needs that is better than Child's school in Blair County. *Id.* at 9. This factor weighed in favor of relocation. *Id.*

(3) *Feasibility of preserving relationship with non-relocating parent*: The court determined that this factor weighed against relocation, because Father would lose his weekly Wednesday contact with Child and would no longer live six blocks away from Child. The court found it impractical to believe that Child would be able to travel to Blair County every Wednesday.

(4) *Child's preference*: The court interviewed Child *in camera* and found her very intelligent and well-mannered. Child "did not wish to express a preference" for either parent. *Id.* at 7. The court decided not to give any

weight to this factor, finding, in so many words, that this factor did not weigh in favor of either parent. *Id.* at 9.

(5) *Parents' established pattern of conduct*: The court found that both parents promoted Child's relationship with the other parent, and therefore this factor did not favor either parent.

(6) *Effect on relocating parent's quality of life*: The court determined that relocation "will have a significant improvement on [Mother's] quality of life, particular[ly] retaining employment that is significantly superior in terms of compensation and opportunity for advancement." *Id.* at 10. The record establishes that Mother's annual salary in her former employment was $21,000.00, while her annual salary in her new job is $72,000.00. N.T., 8/18/21, at 17.

(7) *Effect on child's quality of life*: The court determined that Child will "certainly benefit from her Mother's improved employment" and "enjoy significant benefits if relocation were allowed." Opinion at 10.

(8) *Mother's motivation for seeking relocation*: The court determined both that Mother's reasons for seeking relocation and Father's reasons for opposing relocation were in good faith. Therefore, this factor did not favor either parent.

(9) *Abuse by any parent or member of parent's household*: The court found that there was no abuse, and therefore this factor did not favor either parent.

(10) *Any other factor*: The court did not identify any other factor.

Section 5328(a)

(1) *Parent who is more likely to encourage contact with other parent*: The court found that this factor did not favor either parent, because they are both cooperative.

(2) *Abuse by any parent or member of parent's household*: The court found that there was no abuse, and therefore this factor did not favor either parent.

(3) *Performance of parental duties*: The court found that this factor favored Mother, not because Father performed his duties inadequately, but because Mother has more time with Child.

(4) *Need for stability in Child's life*: The court found that this factor favored Father, because relocation to Allegheny County would "challenge" stability, and Child already has a group of friends in Blair County.

(5) *Availability of extended family*: The court found that this factor favored Father because he had his parents, brother and other family in Blair County, while Mother has a stepmother and aunt near her proposed move.

(6) *Child's sibling relationships*: The court found that Child has a positive relationship with Father's other children, and that this relationship could be maintained through both parents' efforts. Therefore, it appears the court found that this factor did not favor either parent.

(7) *Child's preference*: The court did not accord any weight to this factor because Child did not wish to state a preference for either parent.

(8) *Attempt by either parent to turn Child against other parent*: The court found that neither parent attempted to turn Child against the other parent, so this factor did not favor either parent.

(9) *Parent more likely to maintain loving, stable, consistent and nurturing relationship with Child*: The court found that this factor favored Mother, because she is unmarried and makes Child her sole priority, while Father is remarried and has other children with whom to share his time.

(10) *Parent more likely to attend Child's daily needs*: The court found that this factor favored Mother, because she is unmarried and makes Child her sole priority, while Father is remarried and has other children with whom to share his time. Further, while both parents have full-time jobs, Mother's new job allows flexibility to have time with Child.

(11) *Proximity of residences*: Without stating whether this factor favored one parent or another, the court noted that the parties presently live six blocks apart but will live approximately 100 miles apart due to the proposed relocation.

(12) *Child care arrangements*: The court observed that Child is fourteen[2] and can be alone for certain periods of time.

---

[2] Child has since turned fifteen.

(13) *Level of conflict between parties*: The court stated that the parties' level of conflict has increased due to this litigation, and the level of conflict was "present but tolerable" before this litigation. *Id.* at 14.

(14) *Parents' history of drug or alcohol abuse*: The court found that neither parent had any history of abuse.

(15) *Mental condition of parents or household members*: The court found no evidence of mental issues.

Based on this detailed analysis, the court concluded:

This is a very difficult case as it involves two parties who are both performing their parental duties at an exemplary [Child]. Mother has seemingly dedicated her life to meeting [Child]'s needs. Mother has taken various jobs based on that employment's flexibility to allow her to be present for [Child]. The alignment of priorities has compromised Mother's employment opportunities in ways such as advancement. This current position with American opens substantial opportunities in ways of compensation and advancement. This current position with Vision Benefits of America opens substantial benefits in both of the above areas and certainly has great positive potential for both Mother and [Child].

The only casualty of Mother (and [Child]) moving from Blair County to Allegheny County is Father's relationship with his daughter. Despite assurances from Mother, Father's current relationship with [Child] is almost certain to diminish. Mother's proposal that Father's mid-week visit with [Child] continue is not persuasive. The Wednesday visit that now can occur weekly between Father and [Child] simply cannot be sustained when the distance between their residences is extended from six blocks to one hundred miles. Father, who would benefit continuing this weekly ritual, has . . . demonstrated his understanding of this difficulty for [Child] by eliminating that period.

In conclusion, . . . the Court finds Mother and [Child] will benefit from a substantially improved quality of life if relocation was permitted. Mother has demonstrated the educational, cultural,

- 14 -

and overall positive benefits of relocation outweigh the concerns laid out by Father.

*Id.* at 14-16.

The trial court's decision was a proper exercise of discretion. The court emphasized that both parents offer strong arguments in support of their respective positions. Mother argued that Child has a strong interest in relocating because of Mother's increased compensation and opportunity for career advancement and Child's better educational opportunities in the Upper St. Clair School district. Father vigorously contended Child has a strong interest in continuing to live within six blocks of Father and seeing him on a regular weekly basis. The court concluded, after detailed analysis, that Child's interest in relocation outweighed her interest in continuing to reside in Blair County. Since the court displayed nuanced judgment and attention to all relevant factors, its decision to grant relocation was proper.

Father insists that "[e]ven when compared to a potential slightly better educational opportunity, the relationship of a parent and a child must, as a matter of law, trump a potential educational opportunity of a child." Father's Brief at 23-24. Father fails to recognize that we defer to the trial court on how much weight to give any factor. ***R.M.G.***, 986 A.2d at 1237. Parties such as Father cannot dictate the amount of weight that the court must place on a particular factor. ***Id.*** While the child's relationship with a particular parent is obviously an important consideration, the court is not required to give this factor, or any other factor, dispositive weight. ***See***, ***e.g.***, ***M.L. v. S.G.***, 2020

WL 7353347 (Pa. Super., Dec. 15, 2020) (where Mother argued that court did not give proper weight to certain evidence that was in her favor, "she fails to present case law in which financial, educational, and cultural opportunities are the deciding factors in granting a relocation request").[3]

Here, the trial court held that the overall weight of the evidence favors relocation, because Mother's enhanced compensation and career opportunities and Child's enhanced educational opportunities better serve Child's interests than other factors, such as Child's frequency of contact with Father. We defer to this assessment, because the court had the discretion to determine which of the Section 5337 and 5328 factors carried the greatest weight, and it made this determination following careful analysis of all relevant evidence.

Father's second through seventh arguments attack the court's analysis of individual factors under Sections 5337(h) and 5328(a). We see no abuse of discretion in the court's treatment of any individual factor.

In his second and third arguments, which he presents together, Father argues that the court erred in determining that Mother's relocation was necessary for her to retain her new job and to progress within her new company. According to Father, Mother conceded in her testimony that she could continue working in her new job from her present home in Blair County and did not need to move to Allegheny County to advance her career interests.

---

[3] **See** Pa.R.A.P. 126(b) (nonprecedential memorandum decision of Superior Court filed after May 1, 2019 may be cited for its persuasive value).

Father's Brief at 26-28. Mother testified, however, that although she could work at home temporarily due to COVID, she and new employer agreed that she would move to Allegheny County because her job responsibilities required her to be on site. N.T., 8/18/21, at 15-16. In the future, Mother testified, "we expect that people will be going back into the office." *Id.* at 44. Mother also testified that (1) her salary in her new job ($72,000.00) was considerably more than her old salary ($21,000.00), *id.* at 17, (2) her new job offers medical benefits and 401(k) matching, while she had to pay her own medical benefits in her old job, *id.* at 15, and (3) her new job offers significant opportunities for promotion, *id.* at 15-16. The court credited Mother's testimony that she had to relocate to keep her job, Opinion at 5, 10, as the court had the discretion to do. *R.M.G.*, 986 A.2d at 1237. This evidence supports the court's conclusions that Mother needed to move to Allegheny County and that her proposed relocation has great potential for Mother and Child.

Father's fourth argument consists of two subparts. First, Father insists that the increase in Mother's salary will be offset by greater living expenses, and therefore the court erred in determining that the proposed relocation will enhance Mother's and Child's general quality of life. Father points out that (1) Mother cannot identify the specific address where she will reside in Upper St. Clair, (2) Mother's present home in Blair County does not have a mortgage, and (3) in Upper St. Clair, Mother will be saddled with a costly mortgage or

expensive apartment rent ($1,700 per month). There is no way to tell whether Mother will be able to make mortgage payments, Father continues, because she has not recently applied for a mortgage.

Although the trial court did not explicitly address whether Mother will be able to afford a mortgage or rent in Upper St. Clair, the court clearly implies in its opinion that Mother will be able to meet this burden. The court wrote that Mother's new job is a "**substantial** benefit to Mother" and that her new job is "**significantly superior** in terms of compensation and opportunity for advancement." Opinion at 10 (emphasis added). It is implicit from these findings that the court viewed Mother's enhanced prospects as outweighing Father's concern that Mother will not meet mortgage or rent requirements in Upper St. Clair. Since we defer to the trial court on weight issues, *R.M.G.*, 986 A.2d at 1237, we conclude that this ruling fell within the court's discretion.

Second, Father argues that Mother will make as much money in her new job if she does not relocate than if she moves to Upper St. Clair. Father's argument fails because Mother must relocate to Allegheny County to retain her new job. The court credited Mother's testimony that her new employer expects her to move to Allegheny County and to work on-site. Opinion at 5. As factfinder, the court had the discretion to credit Mother's testimony, and we are bound by this evidentiary determination. *R.M.G.*, 986 A.2d at 1237. By accepting Mother's testimony that she needs to relocate to Allegheny County to keep her new job (and higher income), the court implicitly rejected

Father's argument that Mother can earn the same income from this job if she continues to live in Blair County.

In his fifth argument, Father maintains that Mother failed to demonstrate that Child's quality of life will improve in Allegheny County. We hold that the trial court acted within its discretion by concluding that Child's quality of educational life will improve in Allegheny County. Mother testified that the Upper St. Clair school district's rating is superior to the Blair County school district where Child attended school, and Mother submitted documentary exhibits in support of this point. N.T., 8/18/21, at 57-60. Mother also presented detailed testimony, which the court called "compelling," about Upper St. Clair's program for gifted students such as Child and its extracurricular programs. *Id.* at 59-62. The trial court credited Mother's testimony and exhibits and determined that Child's quality of life will improve in Allegheny County. As factfinder, the court had the discretion to credit this testimony and documentary evidence, and we are bound by the court's findings. *R.M.G.*, 986 A.2d at 1237.

In his sixth argument, Father complains that the court determined erroneously that Mother was not trying to thwart Child's relationship with Father. Father states, for example, that (1) when Mother traveled out of Blair County for work, she would sometimes take Child to a sitter instead of offering her to Father, and (2) Mother does not allow Father extra time with Child beyond what the custody order allows. Father's Brief at 40 ("Father testified

he almost never is provided extra time beyond what is provided to him in the custody order"). The trial court ruled that both Mother and Father performed adequately in allowing contact with the other parent, and there was no advantage to either party. Opinion at 10. We see no abuse of discretion. The evidence demonstrates that Child has visited Father on a regular basis in accordance with the custody order. While Father contends that Mother will not permit Child to have contact with Father **over and above** the custody order, he does not claim that Mother **violated** the order. We know of no authority that requires Mother to go beyond the terms of the custody order or declares that failure to take extra steps is tantamount to thwarting Child's relationship with Father.

In his seventh argument, Father contends that relocation will impair Child's relationship with Father's other two children, whom Father depicts as having a very harmonious relationship with Child. The court reasoned that Child's relationship with the other children "could be maintained with the effort of both [Mother and Father]." Opinion at 12. This ruling was within the court's discretion. Although relocation will reduce Child's contact with the other children (and with Father), the court concluded that the benefits of relocation outweigh the detriments. The court was uniquely suited to make this determination as factfinder, and we see no reason to disturb it.

The overarching theme of Father's brief is that the trial court disregarded factors that Father believes are greatest in importance, *e.g.*,

Child's contact with Father and Father's children. We reiterate, however, that it was within the court's purview as fact-finder to determine which of the many Section 5337 and 5328 factors are most salient and critical. **M.J.M.**, 63 A.3d at 339. The fact that the court found other factors more important than the ones Father wishes to highlight does not provide adequate reason to overturn the court's decision.

For these reasons, we conclude that the trial court acted within its discretion by deciding that the weight of the evidence favors Child's relocation from Blair County to Allegheny County. We affirm its order granting relocation.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/26/2023